UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CRAIG R. BECKER,<br><br>**Plaintiff,**<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE NAVY,<br><br>**Defendant.** | Civil Action No. 24-152 (JEB) |

## MEMORANDUM OPINION

In this Freedom of Information Act case, Plaintiff Craig R. Becker, a lieutenant in the Navy, seeks documents related to the Navy's decision to assert jurisdiction over a foreign criminal investigation of him. To date, various Navy departments have provided Plaintiff with a number of documents but have withheld others in whole or in part on the basis of FOIA Exemptions 3, 5, 6, 7(C), and 7(E). See ECF No. 16-2, Exh. I (Vaughn Index) at ECF pp. 65–134. Defendant now moves for summary judgment, arguing that its search for responsive documents was adequate and that it properly invoked the relevant FOIA exemptions. See ECF No. 16 (MSJ). Because the Navy agreed during briefing to reprocess certain documents, the Court will grant its Motion in part but otherwise will permit Plaintiff to weigh in as to that production.

I.  **Background**

Plaintiff's wife, Johanna Becker, fell to her death from the couple's apartment window in Mons, Belgium, on October 8, 2015. See ECF No. 1 (Compl.), ¶¶ 6–7. In March 2016, Belgian authorities arrested Becker for her murder, and the Navy asserted jurisdiction over the criminal

1

case against him in January 2018. Id., ¶¶ 16–25. After being returned to the United States and tried by court-martial, he was convicted of murder in 2022 and sentenced to life. Id. at 1–2, ¶ 27. He is in the process of appealing his conviction. Id. at 2.

In connection with his appeal, Becker made a FOIA request to the Department of the Navy on December 5, 2022, seeking:

> any and all documents the Navy maintains, including but not limited to letters, emails, notes of conversations, forms, notes of meetings, and any other documented [sic] related to the decision by the Navy to recommend against the United States asserting jurisdiction in the case, as well as the ultimate decision by the Secretary of Defense to have the Navy assert jurisdiction.

ECF No. 1-1 (Plaintiff's FOIA Request) at ECF pp. 2–3. He sought responsive records between October 8, 2015, and February 2, 2018, and further specified which offices should be included in the search. Id. at ECF p. 3.

After some back and forth, Plaintiff began receiving tranches of documents from various Navy departments in 2023. See ECF Nos. 16-1 (Def's Statement of Material Facts), ¶¶ 12, 27, 36, 39; 16-2 (Richard Strong Decl.), ¶¶ 7–13 (describing document releases). Unsatisfied with the Navy's January 2023 release, which included full and partial withholdings based on various FOIA exemptions, Becker filed an appeal with the OJAG General Litigation Division on February 20, 2023. See ECF No. 1-5 (Plaintiff's FOIA Appeal) at ECF p. 1. The Navy, after repeated prompting by Becker, see Compl., ¶¶ 49–58, issued a consolidated final response to his original request in October 2023, in which it informed him that the overall search resulting in various releases throughout the year had located 723 pages of responsive records, of which 492 pages were released with redactions, 93 pages were duplicative, and 138 pages were withheld in full. See Strong Decl., ¶ 13; ECF No. 1-6 (Oct. 23 Response).

2

Plaintiff appealed the October response the next month. See Strong Decl., ¶ 14; Compl., ¶ 64. Before that appeal was resolved, Becker initiated this FOIA suit on January 18, 2024, alleging that the Navy had failed to timely respond to his appeal; that it had improperly withheld responsive records; that the claimed FOIA exemptions do not apply, "as the documents evidence government misconduct"; and that the documents should be released in the public interest. See Compl., ¶¶ 66–111.

After this suit was commenced, the parties held a number of joint conferences that led to further searches by the Navy, although they did not yield additional productions. See ECF No. 11 (Second Joint Status Rep.) at 1–2. Defendant eventually provided a Vaughn Index to Becker, which collates the released, non-duplicative documents and corresponding explanations of the relevant FOIA exemptions claimed. See ECF No. 13 (Fourth Joint Status Rep.) at 1; see also Strong Decl., ¶ 39, n.9. The parties reached another stalemate, however, when Becker indicated that he would seek *in camera* review of a number of documents, which the Navy asserted was not necessary. See Fourth Joint Status Rep. at 2. The Court accepted the parties' proposal to proceed to dispositive motions unless Plaintiff moved for *in camera* review on or before October 30, 2024. Id.; Minute Order of Oct. 4, 2024. Becker did not so move, thereby constructively electing to proceed to summary judgment. See MSJ at 3. The Navy's Motion is now ripe.

**II.    Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment."). In the event of conflicting evidence on a material issue, the court is to construe the evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In those cases, the agency bears the ultimate burden of proof. See U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989). The court may grant summary judgment based solely on information provided in an agency's affidavit or declaration when it describes "the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." ACLU v. U.S. Dep't of Def., 628 F.3d 612, 619 (D.C. Cir. 2011). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### III. Analysis

Congress enacted FOIA in order "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (quotation marks omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (quotation marks omitted). The statute provides that "each agency, upon

any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).  Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds.  See id. § 552(a)(4)(B); DOJ v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989).

"Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'"  Id. (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

The parties have narrowed many of the issues in this case.  Plaintiff, for example, does not contest the adequacy of the agency's search or the applicability of FOIA Exemptions 6 and 7(C), which protect personal privacy interests.  See generally ECF No. 18 (Response).  What remains are his challenges to the Navy's use of Exemptions 3, 5, and 7(E).  The Court will address each in turn; given its holding, it need not consider Plaintiff's alternative request for *in camera* review of certain withheld documents.  Id. at 12.

    A.  Exemption 3

Exemption 3 covers records "specifically exempted from disclosure by statute" provided that such statute either "(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3)(A).  The Court need not consider the applicability of Exemption 3 because all redactions the Navy made under it were

also made under unchallenged Exemptions 6 and 7(C).  See ECF No. 20 (Reply) at 2–3.  Since "the Government may withhold documents or portions thereof as long as [one] privilege applies," Cause of Action Inst. v. DOJ, 330 F. Supp. 3d 336, 351–52 (D.D.C. 2018), the Court "need not address the other exemptions invoked" for a withholding.  See Ctr. for Nat'l Sec. Studies v. DOJ, 331 F.3d 918, 925 (D.C. Cir. 2003).  Plaintiff thus cannot seek independent review under Exemption 3.

    B.  Exemption 5

Exemption 5 applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  Withholdings are restricted to "those documents, and only those documents, normally privileged in the civil discovery context."  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); see also United States v. Weber Aircraft Corp., 465 U.S. 792, 798–99 (1984).  Exemption 5 incorporates three distinct components — namely, the deliberative-process privilege (or "executive privilege"), the attorney work-product privilege, and the attorney-client privilege.  See Am. Immigration Council v. Dep't of Homeland Sec., 905 F. Supp. 2d 206, 216 (D.D.C. 2012).  Defendant invokes all three privileges in its application of Exemption 5.  See MSJ at 9–12.

Becker is not clear about whether his opposition to the Navy's use of Exemption 5 is programmatic or more cabined.  He argues only that the Navy's "use of Exemption 5 on many of the documents is inappropriate" because it already disclosed this material to him in discovery for his criminal trial or through this litigation.  See Response at 6.  In its Reply, the Navy concurred that 39 records have already been released to Becker, and it agreed to re-release those records without Exemption 5 withholdings.  See Reply at 3.  Given that Plaintiff's Exemption 5

6

objections may be allayed by the Navy's re-release, the Court will hold off on ruling until the parties have attempted to iron out their differences.

### C. Exemption 7(E)

Exemption 7(E) authorizes the Government to withhold records if they were "compiled for law enforcement purposes," provided that their publication would, *inter alia*, "disclose techniques and procedures for law enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E). The Court need not engage in this analysis either, however, since none of the Navy's withholdings is solely on the basis of 7(E). See generally Vaughn Index; ECF No. 22 (Defendant's Response to Court's Minute Order). In other words, each document withheld in full or in part under 7(E) is also withheld on the basis of at least one other exemption — most typically Exemption 5. If Plaintiff's 7(E) objections are not resolved by the Navy's Exemption 5 re-release, the parties may so report to the Court. They are otherwise sufficiently covered by the validity of the other exemptions. Given the possibility of future proceedings, furthermore, the Court sees no need for *in camera* review at this time.

### IV. Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order granting Defendants' Motion in part.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: July 10, 2025